# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ROBERT JUAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  07-cv-4005 |
| | ) | |
| JOHN DEERE AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Before the Court are the Motion for Summary Judgment filed by Defendant, Deere & Company,[1] on April 17, 2009 [Doc. 34], the Motion to Strike Portions of Supplemental Complaint filed by Defendant on July 1, 2009 [Doc. 44], the Motion for Summary Judgment on Plaintiff's Supplemental Complaint filed by Defendant on September 21, 2009 [Doc. 48], and the Amended Motion for Summary Judgment on Plaintiff's Supplemental Complaint filed by Defendant on October 26, 2009 [Doc. 52].  For the reasons set forth below, the Motion for Summary Judgment is GRANTED, the Motion to Strike is MOOT, the Motion for Summary Judgment on the Supplemental Complaint is MOOT, and the Amended Motion for Summary Judgment on the Supplemental Complaint is GRANTED.

---

[1] Defendant states that Plaintiff has incorrectly named it "John Deere and Company."

## BACKGROUND

Plaintiff alleges in an August 10, 2007 Amended Complaint [Doc. 23] that he was subject to discrimination for various reasons including his age, disability, national origin and race. Plaintiff makes claims of hostile work environment because of his race (Count I), race discrimination (Count II), disability discrimination (Count III), age discrimination (Count IV), retaliation for filing a Charge of Discrimination (among other things) (Count V), and an Illinois state law claim of retaliatory discharge (Count VI). In his Supplemental Complaint [Doc. 42], Plaintiff adds additional counts of retaliation for filing this lawsuit (Count VII) and an Iowa state law claim of retaliatory discharge (Count VIII).

It would be beneficial to give a broad summary of Plaintiff's relationship with Defendant and then provide the details. Robert Juarez was employed by Defendant prior to 1982 and from 1998 to 2003. In 2003, Juarez became disabled and no longer was capable of working. When Juarez's disability benefits ran out in June, 2008, his employment was coincidentally terminated by operation of a provision in the Collective Bargaining Agreement (hereinafter "CBA") to which he was subject. However, after filing a grievance through his Union, Local 281, Juarez was reinstated in October, 2008 and given back pay to cover the months of June to October, 2008. The grievance was granted by Defendant when a doctor indicated that he could work without restrictions. Juarez's employment did not last. On March 6, 2009, Juarez was involved in an altercation with a supervisor, Steve

Hansen, and his employment was suspended. After a Disciplinary Action Hearing pursuant to the CBA, Juarez's employment was terminated on March 10, 2009.

The two Charges of Discrimination were filed during his disability period and prior to his return to work. It appears that Juarez was informed in July, 2006 that when his disability benefits expired, his employment would be terminated. This prompted the first Charge of Discrimination which was filed in September, 2006. The second charge, filed in August, 2007, alleges that Defendant retaliated against him for filing the September, 2006 Charge. The Amended Complaint [Doc. 1] in this matter was filed prior to the filing of the second Charge and prior to Juarez's reinstatement in October, 2008. His Supplemental Complaint [Doc. 42] was filed after his employment was terminated.

Now to the details. Juarez was rehired by Defendant on February 16, 1998[2] and worked at its Davenport Works. Plaintiff was a member of Local 281 of the International Union United Automobile, Aerospace and Agricultural Implement Workers of America and his employment with Defendant was governed by a Collective Bargaining Agreement (hereinafter "CBA") (Defendant's Appendix to Motion for Summary Judgment (hereinafter "App."), p. 42-68). On April 7, 2003, Juarez stopped working because of a disability, an inability to tolerate fumes and dust, and he began receiving disability payments. According to the CBA, "employment will be broken" for a number of reasons, including when an employee quits or is discharged. (App. p. 64-65). In relevant part, the CBA also provides that

---

[2] Plaintiff was discharged from a position at John Deere Parts Distribution Warehouse in Milan, Illinois in September, 1982.

employment will be broken if an employee has been absent from active employment for a time period that equals his seniority prior to the absence. (App. p.64). From February, 1998 to April, 2003, Juarez had accumulated 62 months of seniority. From April, 2003 to June, 2008, a total of 62 months, Juarez had been absent from active employment. Thus, Juarez's employment was "broken," i.e. terminated, by operation of the CBA in June, 2008. It also happens that Juarez's disability benefits also ended in June, 2008.

While Plaintiff was disabled, on September 24, 2005, Juarez authored a letter to Nicole Thomsen, Manager of Industrial Relations, informing her that he "do[es] not see where I can return to fulltime employment from a labor perspective" based on his doctor's opinion. (App. p. 5). A year later, on August 17, 2006, Juarez wrote another letter to Thomsen stating "[t]here are no immediate plans for my returning to employment with Deere Davenport, due [sic] to my current medical condition." (App. p. 6). Prior to April,, 2007, Thomsen was not aware that Juarez was willing to return to work. (App. p. 83, Thomsen Affidavit ¶ 6). However, she became aware that Juarez wanted to return to work through contact with Deere Direct which is a unit of Defendant that deals with disability benefits. (Id.). In response, on April 23, 2007, Thomsen sent a letter to Juarez informing him of the steps necessary to return to work, including the necessity of a medical release and medical examination. (App. p. 85). Thomsen sent a follow-up letter to Juarez on April 30, 2007 indicating the items that were not completed for a successful return to work. (App. p. 83, Thomsen Aff. ¶ 7). Thomsen then states that in a May 3, 2007 letter,

Juarez indicated that "he still had medical problems." (App. p. 84, Thomsen Aff. ¶ 10).

The record is not particularly clear, however, it seems that around June, 2006, Deere Direct informed Juarez his disability benefits would terminate a year later. It also appears that Juarez was told or assumed that his employment also would cease at that time. On June 4, 2007, Deere Direct terminated Juarez's long term disability benefits. On June 14, 2007, Juarez filed a grievance pursuant to the CBA stating that he is physically able to return to work but that Defendant is not allowing him to work. (App. p. 36). This grievance was denied on July 12, 2007. (Id.). Juarez filed a second grievance on August 23, 2007 which also was denied. (App. p. 37).

Deere Direct, however was mistaken in terminating Juarez's benefits in June, 2007. In fact, Juarez was entitled to an additional year of long term disability benefits. Deere Direct caught the error and, in an October 3, 2007 letter, acknowledged that Juarez's benefits would continue until June 7, 2008. (App. p. 33). Juarez contacted Thomsen again on November 6, 2007 about the steps necessary to return to work, to which Thomsen responded. (App. p. 83, Thomsen Aff. ¶ 8). It appears that Juarez received a return to work note from Dr. Felipe Enriquez (who examined Plaintiff pursuant to the CBA)[3] and he resumed

---

[3] On August 28, 2008, Dr. John Lake, the Medical Director, Construction Operation, for Deere, wrote a letter to Dr. Enriquez outlining, in brief, Juarez's medical history as it relates to his work. (App. p. 157-158). The letter notes that Juarez was given permanent work restrictions of no exposure to paint and no regular work in dust fumes or gases. (Id.) Dr. Lake believed that the restrictions should remain while Juarez and his own doctor believed that the restrictions could be removed. Thus,

employment in October, 2008. (App. p. 160). The resumption of Juarez's

employment was the result of a settlement agreement of a third grievance that

Juarez filed (Defendant has not provided a copy of this grievance) (App. p. 84,

Thomsen Aff. ¶ 10). The settlement also provided that Juarez would receive back-

pay from June, 2008 to October, 2008. (Id.). As noted above, his employment did

not last long.

On September 29, 2006, Juarez filed a Charge of Discrimination against

Defendant. (App. p. 21). In this Charge, Juarez stated:

> I was initially hired by Respondent in June 1979 and was discharged
> in 1982 for violation of Respondent's attendance policy. I was rehired
> by Respondent in 1998 and my most recent position was Resource Pool
> Employee. Since my rehiring, similarly situated non-Mexican
> employees have also violated Respondent's attendance policies, most
> recently in or about June 2005, but they have not been discharged.
> Additionally, since April 2003 Respondent has kept me on disability
> leave. I have attempted to return to work as recently as July 2006, to
> no avail. On or about July 2006 I was informed by Respondent that I
> will be discharge in or about June 2007 when my disability benefits
> expired.
>
> I believe that I have been discriminated against because of my national
> origin, Mexican . . . . I also believe that I have been discriminated
> against in violation of the Americans with Disabilities Act of 1990, as
> amended. Id.

Juarez received a Right to Sue letter on September 25, 2007. (App. p. 24).

Juarez filed a second Charge of Discrimination on August 16, 2007. (App. p. 25). In

this Charge, he added a claim of retaliation for complaining about discrimination in

September, 2006 and added another bases for discrimination, his age. (App. p. 25).

---

Dr. Lake enlisted the opinion of Dr. Enriquez pursuant to the CBA, to provide a
third party review. (Id.)

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those

inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232,

236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a

rational trier of fact to find for the non-moving party," then no genuine issue of

material fact exists and, the moving party is entitled to judgment as a matter of

law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

However, in ruling on a motion for summary judgment, the court may not weigh the

evidence or resolve issues of fact; disputed facts must be left for resolution at trial.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Plaintiff does not oppose summary judgment on the hostile work environment

claim (Count I) the race discrimination claim (Count II). Summary judgment in

favor of Defendant is granted with respect to these claims.

As to Counts III through VI, Plaintiff uniformly states: "Plaintiff stands by

the allegations in the complaint and believes sufficient facts are in dispute to deny

Defendant's Motion." Unfortunately for Plaintiff, it is black letter law that he may

not stand on the pleadings in response to a Motion for Summary Judgment: he must

provide evidence from which a reasonable jury could find in his favor. Anderson,

477 U.S. at 248; Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1104 (7th

Cir. 2008) ("Summary Judgment is the 'put up or shut up; moment in a lawsuit.").

Plaintiff did state some "facts" in relation to Counts III and Count V (retaliation),

however, these facts do not establish any kind of constitutional violation. Plaintiff

has failed to establish that his rights were violated on account of his age, disability,

or race or that he was retaliated against for filing a Charge of Discrimination or for filing this lawsuit. Rather, it appears that Plaintiff became disabled and did not want to work or could not work because of this disability. It further appears that when Plaintiff's disability benefits were set to expire, he made no meaningful attempt to return to work. Instead, he decided to file a Charge of Discrimination based, in part, on events prior to 1982 that are clearly time-barred. He then made half-hearted attempts to return to work. In the meantime, his employment was terminated, not through an action of his employer, but through operation of a CBA to which he was subject. Finally, his employment was resumed through agreement. Thus, it does not appear that any adverse job action occurred.

Defendant has thoroughly outlined the myriad reasons why Plaintiff's claims should all fail as a matter of law. Plaintiff offers no meaningful response to any of these arguments. The Court finds all of Defendants' arguments, including its timeliness arguments, well-taken and adopts the same herein. However, a brief recitation of why Plaintiff's claims fail on the merits is set forth below.

In order to succeed on his claim that Defendant violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, Plaintiff must show that he is disabled, that he is qualified to perform a job with reasonable accommodation, and that his employer took an adverse job action because of his disability. Winsley v. Cook County, 563 F.3d 598, 603 (7th Cir. 2009). Plaintiff has not provided any evidence from which a reasonable jury would find that he is disabled: while Plaintiff was on disability leave from his employment due to his inability to tolerate fumes there is

no showing that Plaintiff was disabled within the meaning of the ADA.  Nese v.

Julian Nordic Const. Co., 405 F.3d 638, 642-643 (7th Cir. 2005) ("A medical

condition, however, by itself does no constitute disability under the statute.").

Therefore, because Plaintiff has failed to present a *prima facie* case of

discrimination, this claim must fail as a matter of law.

To succeed on his claim that Defendant discriminated against him on account

of his age in violation of the Age Discrimination in Employment Act, Plaintiff must

show that he would not have suffered an adverse job action but for his age.  Senske

v. Sybase, Inc., 588 F.3d 501, 506 (7th Cir. 2009) (citing Gross v. FBL Fin. Servs.,

Inc., ___ U.S. ___, 129 S.Ct. 2343 (2009).  There is no evidence that age played a

role in any of Defendant's employment decisions, let alone that age was the "but for"

reason for any action.  Plaintiff also has presented no evidence that would satisfy an

indirect burden of proof.   In particular, Plaintiff has presented no evidence that he

was meeting his employer's legitimate expectations, that he suffered an adverse

employment action, or that similarly situated employees were treated more

favorably.  See Martino v. MCI Communications Services, Inc., 574 F.3d 447, 453

(7th Cir. 2009).  Of particular importance with respect to the ADA and the ADEA

claims is that, during the relevant time period, there is no evidence that Plaintiff

was capable of returning to work and performing his job duties.  Nowak v. St. Rita

High School, 142 F.3d 999, 1003 (7th Cir. 1998) (stating in an ADA case that a

plaintiff bears the burden of showing that "he possessed the necessary skills to

perform his job and that he was willing an able to demonstrate these skills by coming to work on a regular basis." (citations and quotation marks omitted)).

In order to succeed on a claim that he was retaliated against for filing a Charge of Discrimination, Plaintiff must show a causal connection between the protected conduct and the retaliatory action or must at least show a prima facie case of retaliation through the indirect burden-shifting method. Argyropoulos v. City of Alton, 539 F.3d 724, 733 (7th Cir. 2008). Plaintiff cannot show a causal connection between the protected activity, the filing of the September, 2006 Charge and any adverse employment action. It is clear from the record that the only actual adverse employment action was his most recent termination in March, 2009. This termination cannot be the basis for Plaintiff's retaliation claim because it occurred *after* he filed a Charge of Discrimination asserting retaliation. Prior to that, Plaintiff's employment was only terminated through operation of a provision in the CBA. Plaintiff has presented no evidence that the contractual termination of his employment constitutes an "adverse employment action." A materially adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v, White, 548 U.S. 53, 68 (2006). A bargained for and contractual termination of employment cannot function to dissuade any reasonable person from following through with a Charge of Discrimination. Plaintiff further has presented no evidence that Defendant affirmatively kept him on disability leave in order to extend his "inactive" status. Plaintiff only offers speculation to this effect. The

evidence clearly shows that Plaintiff's actions and inaction prevented a meaningful

return to work.    In any event, Plaintiff's employment never was actually

terminated (until March 2009) and there is no showing of any other kind of "adverse

employment action" that would support this, or any other, claim made by Plaintiff.

Plaintiff also asserts that he was retaliated against for filing and pursuing

this lawsuit.  Plaintiff offers no actual evidence that any of Defendant's actions were

in retaliation for his complaints.  Plaintiff only offers supposition, conjecture, and

speculation that he was retaliated against. <u>Stephens v. Erickson</u>, 569 F.3d 779, 786

(7th Cir. 2009) (noting that "the nonmoving party must point to specific facts

showing that there is a genuine issue for trial, and inferences relying on mere

speculation or conjecture will not suffice")).  There is simply no showing that any of

Defendants' actions were in retaliation for the exercise of protected activity and

there is certainly no evidence that Plaintiff's eventual termination in March, 2009

was a pretext for any kind of discrimination or retaliation.  With respect to

Plaintiff's state law claims of retaliation, they are simply and wholly without merit

and require no further discussion.

## CONCLUSION

Plaintiff has failed the most fundamental requirement of Rule 56: the

presentment of evidence showing a genuine issue for trial.  The evidence before the

Court can lead to only one reasonable conclusion: that Plaintiff was neither

discriminated against nor retaliated against for engaging in protected activity.

For the foregoing reasons, the Motion for Summary Judgment filed by Deere & Company [Doc. 34] is GRANTED, the Motion to Strike Portions of Supplemental Complaint filed by Defendant [Doc. 44] is MOOT, the Motion for Summary Judgment on Plaintiff's Supplemental Complaint filed by Defendant [Doc. 48] is MOOT, and the Amended Motion for Summary Judgment on Plaintiff's Supplemental Complaint filed by Defendant [Doc. 52] is GRANTED.

The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

CASE TERMINATED


Entered this 10th day of February, 2010


                                        s/ Joe B. McDade
                                     JOE BILLY MCDADE
                                  United States District Judge